**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JEREMY SHERLAND**                                                                    **PLAINTIFF**

**V.**                                    **CASE NO. 5:25-cv-05084-TLB**

**TREVOR HAMMONS, individually**
**and in his official capacity; and**
**MATT DURRETT, individually and**
**in his official capacity**                                                        **DEFENDANTS**

**JOINT RULE 26(f) REPORT**

Come now the parties, by and through undersigned counsel, and for their Joint Rule 26(f)

Report, state:

     1.     Plaintiff's Statement of the Case.

          **RESPONSE:  See Exhibit A.**

     2a.    Separate Defendant Trevor Hammons' Statement of the Case.

          **RESPONSE: See Exhibit B.**

     2b.    Separate Defendant Matt Durrett's Statement of the Case.

          **RESPONSE:  See Exhibit C.**

     3.     Are there any objections pursuant to Rule 26(a)(1)(C) to providing required Initial

Disclosures?

**RESPONSE: Yes. Defendants Hammons and Durrett object to providing certain**

**sensitive documents without the entry of a protective order, to include, documents which**

**refer to Plaintiff's minor son, who is the victim of the alleged crime. Plaintiff states that he**

**has no objections pursuant to Rule 26(a)(1)(C).**

     4.     Are there any objections to the timing of Rule 26(a) Initial Disclosures?

1

**RESPONSE: None with the exception of needing a protective order prior to producing the sensitive documents referenced above.**

5.    Agreed Document Productions.

**RESPONSE: The parties agree to provide any and all documents that support the parties' claims, damages, and defenses in their Initial Disclosures. Defendants Hammons and Durrett request that a protective order be entered prior to providing any documents which refer to Plaintiff's minor son, who is the victim of the alleged crime.**

6.    Discovery.

(a)    How many months are reasonably necessary to complete discovery – as measured from the date of the Case Management Hearing?

**RESPONSE: The parties agree that 8 months is necessary to complete discovery.**

(b)    Do the parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules? If so, explain.

**RESPONSE: No.**

(c)    Do the parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed.

**RESPONSE: No.**

(d)    Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "complex," then please complete and attach Schedule A.

**RESPONSE:  Fairly simple and routine.**

(e)     Do you anticipate the use of expert witnesses at trial? If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant to Rule 26(a)(2).

**RESPONSE: Defendants Hammons and Durrett do not anticipate the use of expert witnesses. Plaintiff may use an expert witness to establish damages.**

(f)     Do the parties presently contemplate the need for a protective order prior to the exchange of documents or information?

**RESPONSE: Yes. The parties request that a protective order be entered prior to providing any documents which refer to Plaintiff's minor son, who is the victim of the alleged crime. Said protective order would also cover any personal and sensitive information that may be requested during the course of discovery.**

7.     State the parties' best estimate as to the number of days reasonably necessary to fully try the case.

**RESPONSE: The parties estimate that three days are needed for trial.**

8.     State whether 90 days – measured from the Case Management Hearing – is a sufficient amount of time to add parties and/or amend pleadings.

**RESPONSE: Yes.**

9.     Settlement Prospects.

**RESPONSE: Settlement has not been discussed between the parties. As for the Separate Defendants Trevor Hammons and Matt Durrett, there is little interest—at this point—of settling this case. Plaintiff states that he would entertain a reasonable settlement offer.**

10.     Special Issues and Schedules.

3

**RESPONSE: Complaint seeks recovery for personal injuries.  Schedule G is attached hereto.**

11.     Have all corporate parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?

**RESPONSE: Not applicable.**

12.     Magistrate Judge Jurisdiction.  Counsel affirm they have discussed with their clients and each other the option of consenting to Magistrate Judge jurisdiction.

**RESPONSE: The parties, by their signatures below, do not consent to Magistrate Judge jurisdiction.**

Respectfully submitted,

**CITY DEFENDANT,**
**Trevor Hammons, individually and officially**

By: /s/ Jenna Adams
JENNA ADAMS, Ark. Bar No. 2015082
P.O. BOX 38
NORTH LITTLE ROCK, AR 72115
TELEPHONE (501) 978-6115
FACSIMILE (501) 978-6558
EMAIL: jenadams@arml.org

AND

**STATE DEFENDANT**
**Matthew Durrett**

/s/ Samuel F. Pollock
Samuel F. Pollock, Ark. Bar No. 2024174
Assistant Attorney General
Arkansas Attorney General's Office
101 West Capitol Ave.
Little Rock, AR 72201
TELEPHONE 501-301-0186
FACSIMILE 501-682-2591
EMAIL:samuel.pollock@arkansasag.gov

AND

**PLAINTIFF**
**Jeremy Sherland**

/s/ Kevin Lemley_____
Kevin Lemley, Ark. Bar No. 2005034
Madison Cameron, Ark. Bar No. 2017168
Lauren Scroggins, Ark. Bar No. 2022201
Lemley Law Partners
206 Plaza Blvd., Suite F
Cabot, AR 72023
lawsuits@lemley-law.com
(501) 512-0098

5

## Schedule G

## Complaint for Personal Injuries and/or Wage Loss

1.      In personal injury cases, Plaintiff(s) shall sign and provide defense counsel with an appropriate medical release and list of treating medical providers (going back 5 years prior to the occurrence in question), by no later than the Initial Disclosure Deadline.

2.      If wage loss and/or earning capacity is an issue, then the parties shall discuss the appropriateness of providing an employment records release, a list of current and prior employers, and other income verification documentation, such as tax returns, W-2s, etc. Ordinarily such documentation should be provided to defense counsel by no later than the Initial Disclosure Deadline.

3.      Plaintiff shall provide a statement indicating its compliance with the provisions noted above. If these materials will not be provided by said deadline, then Plaintiff shall state an explanation as to why, including, if applicable, the parties' agreement to produce these materials by a particular date.

4.      If Defendant has liability insurance, then it must provide a specimen copy of all such insurance policies and declaration pages by no later than the Initial Disclosure Deadline.

**EXHIBIT A**
**PLAINTIFF'S STATEMENT OF THE CASE**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress the violation of Plaintiff Jeremy Sherland's rights under the United States Constitution and Arkansas Constitution.

Plaintiff is the father of Zethen Sherland. In 2022, Zethen Sherland had his ear pierced. On January 6, 2023, Zethen Sherland began attending Har-Ber High School. His earring was on prominent display. On April 20, 2023, a teacher claimed to have heard Zethen Sherland say Plaintiff held him down and pierced his ear against his will. The teacher reported this statement to DHS. The statement was false.

Officers of the Tontitown Police Department initially met with Zethen Sherland and Plaintiff. Both Zethen Sherland and Plaintiff explained that the statement was false and that Zethen's ear had been pierced the previous year. Other officers showed up and demanded to interview Zethen separately. Plaintiff exercised his constitutional rights to (1) end the voluntary police encounter; (2) deny access to Zethen Sherland; and (3) speak negatively to the police officers without using fighting words. The officers left the residence.

At this point, the officers had no right to access to Zethen Sherland. They needed to either (1) get a warrant; or (2) assist DDS. They took neither action. DHS did have the right to access, as well as the right to seek an ex parte order. The officers then left and improperly sought a probable cause determination from the prosecuting attorney. They never obtained a warrant. The prosecutor never filed a criminal information. A neutral judge never made a probable cause determination.

Defendants returned to Plaintiff's home and unlawfully entered without a warrant. They arrested him under the guise of a statute that regulates cosmetologists. The arrest was concocted merely to remove Plaintiff from the residence to give them access to Zethen Sherland. Once Plaintiff was removed, the

7

officers interviewed Zethen Sherland.  The officers took this action in retaliation for Plaintiff exercising his constitutional rights.

Plaintiff was taken to jail for 2 days.  No criminal charges were ever formally filed.  The DHS proceeding was quickly terminated in Plaintiff's favor.

The primary theories of Plaintiff's case are federal and state constitutional violations for unlawful entry, unlawful arrest, malicious prosecution, and retaliation.  Plaintiff will seek damages and attorney's fees.

**EXHIBIT B**
**STATEMENT OF THE CASE OF SEPARATE DEFENDANT TREVOR HAMMONS**

On April 20, 2023, a teacher intern at Har-Ber High School in Springdale, Arkansas reported to Assistant Principal Brett Unger ("Principal Unger") that a young male (later identified as Mr. Sherland's son) had gone to school with a piercing in his left ear, and while talking in class with students, the boy stated that his father has been intoxicated the night before and had put him in a choke hold and shoved the piercing in his ear. Principal Unger told the intern to call in the report to the Arkansas Child Abuse and Neglect Hotline. Principal Unger then reported the incident to School Resource Officer Ross ("Officer Ross").

At approximately 5:00 p.m., Sgt. Trevor Hammons ("Sgt. Hammons") with the Tontitown Police Department ("TPD") was contacted by Officer Ross requesting that Sgt. Hammons perform a welfare check on a child living at 842 Via Drago, Unit B based on the report that had been made. At approximately 6:00 p.m., TPD officers arrived at 842 Via Drago, the residence of Jeremy Sherland ("Mr. Sherland"). Mr. Sherland admitted to piercing his son's ear. Officers informed Mr. Sherland that they were there to investigate and determine whether a crime had been committed. However, Mr. Sherland refused to allow officers to speak privately with his son without an attorney present and refused to identify himself for the purposes of the police report. Officers informed Mr. Sherland that DHS would be following up on the report, and that they would submit this information to the prosecutor to determine whether they wanted to issue a warrant for his arrest. Officers noted that Mr. Sherland had been drinking at the time of the interaction. Officers ultimately left.

Concerned with the wellbeing of Mr. Sherland's child, Sgt. Hammons consulted with Prosecutor Dean at the Washington County Prosecutor's Office about the situation. Prosecutor

9

Dean advised, based on the facts alleged and officers' interaction with Mr. Sherland, that Mr. Sherland should be arrested for performing body art in an unlicensed facility, a class D felony pursuant to Ark. Code Ann. § 20-27-1502(h)(3)(i)(1). Prosecutor Dean also advised that the child should be taken to the Child Safety Center to be interviewed.

At approximately 7:00 p.m., officers returned to Mr. Sherland's residence, knocked on the door, and told Mr. Sherland that he was being arrested for unlicensed body art. Mr. Sherland was asked to step outside, which he refused to do, instead resisting arrest. Officers were eventually able to gain control of Mr. Sherland and place him in handcuffs. As officers were arresting Mr. Sherland and taking him to the patrol car, Mr. Sherland was being belligerent, yelling and cursing at officers in the presence of children in the area. Eventually, a DHS case worker arrived on scene. Mr. Sherland was transported to Washington County Detention Center. Upon information and belief, the prosecutor ultimately did not file charges against Mr. Sherland.

Separate Defendant denies any and all wrongdoing alleged by the Plaintiff and states that there is no basis for municipal or individual liability—no constitutional violation occurred and even if one had, there was no policy, practice or custom that led to any violation. Separate Defendant believes the evidence will support his affirmative defenses and believe the undisputed facts will demonstrate that Plaintiff cannot make a viable claim of wrongdoing on the part of Separate Defendant. However, Separate Defendant will need to take discovery to verify his initial impressions regarding his affirmative defenses in this matter and, therefore, determine what the complete *material* undisputed facts are and submit the same in conjunction with a dispositive motion before the due date for such a motion. Separate Defendant should be entitled to judgment on all of Plaintiff's claims.

**Exhibit C: Defendant Durrett's Statement of the Case**

On or about April 20, 2023, officers from the Tontitown Police Department contacted a deputy prosecutor from the Fourth Judicial District of Arkansas. Officers told the deputy prosecutor the facts as described in the police report, and the deputy prosecutor advised the officers that there was probable cause to arrest Mr. Sherland under the facts conveyed to the deputy prosecutor.

Following the arrest of Mr. Sherland, the prosecutors declined to press any charges due to uncooperative witnesses. Mr. Sherland's lawsuit followed.

11